**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                                          :                   FOR PUBLICATION

                                                                                 :

VIVARO CORPORATION, *et al.*,                          :                   Chapter 11

                                                                                 :

              Debtors.                                                      :                   Case No. 12-13810 (MG)

                                                                                 :

                                                                                 :                   (Jointly Administered)

-------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF                            :

UNSECURED CREDITORS OF VIVARO              :

CORPORATION, *et al.*,                                        :

                                                                                 :

              Plaintiffs.                                                    :

                                                                                 :

              v.                                                                 :                   Adv. Proc. No. 14-02213 (MG)

                                                                                 :

LEUCADIA NATIONAL CORPORATION,           :

BALDWIN ENTERPRISES, INC., BEI                 :

PREPAID, LLC, BEI PREPAID HOLDINGS,       :

LLC, PHLCORP, INC., IAN CUMMINGS,            :

JOSEPH STEINBERG, DAVID LARSEN, ST       :

FINANCE LLC, SAMER TAWFIK, AND              :

DOES 1 - 12,                                                          :

                                                                                 :

              Defendants.                                                 :

-------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS**

*A P P E A R A N C E S:*

ARENT FOX LLP
*Attorneys for The Official Committee of*
*Unsecured Creditors of Vivaro Corporation*
1675 Broadway
New York, New York 10019
By:      George Angelich, Esq.
            David Wynn, Esq.
            Eric Roman, Esq.
            George Utlik, Esq.

DLA PIPER LLP (US)
*Attorneys for Defendants Leucadia National*
*Corporation, Baldwin Enterprises, Inc., BEI*
*Prepaid, LLC, BEI Prepaid Holdings, LLC,*
*Phlcorp, Inc., Ian Cumming, Joseph Steinberg,*
*David Larsen, and Jim Continenza*
1251 Avenue of the Americas
New York, New York 10020-1104
By:    Thomas R. Califano, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Defendants Leucadia National Corporation ("Leucadia"), Baldwin Enterprises, Inc.

("Baldwin"), BEI Prepaid, LLC ("BEI Prepaid"), BEI Prepaid Holdings, LLC ("BEI Prepaid

Holdings"), Phlcorp, Inc. ("Phlcorp"), Ian Cumming, Joseph Steinberg, David Larsen, and Jim

Continenza (together the "Moving Defendants") move to dismiss (the "Motion," ECF Doc. #8)[1]

the adversary proceeding complaint (the "Complaint," ECF Doc. #1) filed by the Official

Committee of Unsecured Creditors of Vivaro Corporation (the "Committee" or the "Plaintiff").

The Committee filed an opposition to the Motion (the "Opposition," ECF Doc. # 13), and the

defendants submitted a reply (the "Reply," ECF Doc. # 17).  The Court heard oral argument on

January 22, 2015 and took the matter under submission.

The Moving Defendants are each alleged to have previously retained some form of direct

or indirect ownership interests in or control over STi Prepaid, LLC ("STi"), one of the debtors in

the chapter 11 case also before this Court.  The Committee filed this adversary proceeding in an

attempt to climb up STi's former corporate ladder and claw back approximately $50 million-

worth of alleged fraudulent conveyances that each of the Moving Defendants either directly or

indirectly benefited from.  The Moving Defendants argue that the Committee's attempt misses

---

[1]       All references to "ECF Doc. # __" refer to documents on the docket of Adversary Procedure Number
14-02213 unless otherwise specified.

the mark and the Complaint fails to state a single viable claim for relief. They also assert that some of the claims are time barred under New York law.

As explained below, the Court grants the Motion in part with leave to amend and denies the Motion in part.

## I.    BACKGROUND

### A.    Procedural History

On September 5, 2012, STi, Vivaro Corporation ("Vivaro"), Kare Distribution, Inc., STi Telecom, Inc., TNW Corporation, STi CC1, LLC, and STi CC 2, LLC (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. (Case No. 12-13810, ECF Doc. # 1.) On August 25, 2014, the Court approved a stipulation authorizing the Committee to pursue, among others, fraudulent conveyance claims (ECF Doc. # 552). On September 4, 2014, the Committee commenced this adversary proceeding seeking to avoid purported fraudulent conveyances made by Debtors STi and Vivaro to the named defendants while those Debtors were insolvent. (*See generally* Compl.)

After the Court suggested that the parties meet and confer to try to narrow the scope of the issues in dispute in the Motion, the Committee voluntarily withdrew, without prejudice, its claims against Moving Defendants Cumming, Steinberg, Larsen, and Continenza. (Opp. ¶¶ 1, 67.) All other claims against each of the other Moving Defendants[2] remain at issue in the Motion.

### B.    Allegations in the Complaint

The following facts are taken from the Complaint and assumed as true for purposes of resolving the Motion. The Complaint challenges two groups of fraudulent conveyances: (1)

---

[2]    The term "Moving Defendants" will hereinafter refer to the remaining defendants that filed the Motion and will not include the four individual defendants who are no longer subject to the lawsuit in light of the parties' agreement.

transfers in 2007 and 2008 from Debtor STi to Defendant Baldwin (the "STi Transfers"), and (2) payments by Debtors Vivaro and STi to Baldwin in connection with Vivaro's acquisition of membership interests in STi, a limited liability company ("LLC") (the "Acquisition Payments").

        1.     *Moving Defendants' Ownership Interests and Corporate Structure*

Leucadia is at the top of the corporate structure. (Compl. ¶ 36, Figure 1.) Phlcorp is second in line, as a wholly-owned subsidiary of Leucadia. (*Id.* ¶ 15.) Baldwin is third in line, as a wholly-owned subsidiary of Phlcorp. (*Id.* ¶¶ 12, 15.) The remaining entities are LLCs with one or more LLC members who have ownership and voting interests in each LLC. (*Id.* ¶¶ 12–15.) Baldwin holds a 90% LLC membership interest in BEI Prepaid Holdings, but retains a 100% voting interest in that LLC. (*Id.* ¶¶ 14, 36.) BEI Prepaid Holdings holds a 90% LLC membership interest in BEI Prepaid. (*Id.* ¶ 13.) BEI Prepaid held a 75% LLC membership interest in STi as of March 2007. (*Id.* ¶¶ 13, 29–32.)

        2.     *The STi Transfers*

In January 2007, Leucadia entered into an agreement with a third party, Telco Group, Inc. ("Telco"), to expand its telecommunications holdings by purchasing Telco's prepaid calling card business from its then 100% owner, Samer Tawfik. (*Id.* ¶ 30.) In March 2007, Leucadia indirectly owned a 75% interest in STi and, at such time, STi purchased a 75% interest in Telco for approximately $121.8 million. (*Id.* ¶¶ 29–32.) In 2007, STi was a LLC with only two members: (i) BEI Prepaid, a 90% indirectly-owned subsidiary of Leucadia that held a 75% interest in STi; and (2) ST Finance LLC ("ST Finance"), which held a 25% interest in STi. (*Id.* ¶ 34.) Leucadia remained the 75% indirect owner of STi until October 2010, when a 75% interest in STi was sold to Vivaro. (*Id.* ¶ 35.)

4

The Complaint alleges that in 2007 and 2008, after STi purchased Telco, STi made repeated transfers directly to Baldwin. (*Id.* ¶ 48.) Baldwin is allegedly a Colorado corporation that was a wholly-owned subsidiary of Leucadia. (*Id.* ¶ 12.) The challenged transfers made to Baldwin include: (1) a $15 million transfer via a Fedwire debit to "Baldwin Enterprises" on June 5, 2007 (*id.* ¶ 49); (2) a $12 million transfer to Baldwin on November 5, 2007 (*id.* ¶ 50); (3) a $5 million transfer to Baldwin on July 22, 2008 (*id.* ¶ 51); and (4) a $5 million transfer via a book transfer debit to "Baldwin Enterprises Inc. Salt Lake City UT" on December 31, 2008 (*id.* ¶ 52). The Complaint alleges that "on information and belief" all of these transfers were made directly to Baldwin. (*Id.* ¶ 58.) The Complaint asserts that Baldwin was not a LLC member of STi and, as a result, the challenged STi Transfers cannot be construed as LLC member distributions pursuant to STi's LLC agreement. (*Id.* ¶¶ 57–60.)

The Complaint further alleges that:

> on information and belief, Defendants BEI [Prepaid] Holdings and Phlcorp, as indirect parents of STi . . . also received all or part of the STi Transfers. . . . Thus to the extent that Defendants Leucadia, BEI [Prepaid] Holdings, BEI[ Prepaid], [and] Phlcorp . . . were transferees of funds from STi during the time period relevant to this Complaint, those transfers are avoidable and recoverable as fraudulent transfers.

(*Id.* ¶¶ 54, 56.)

The Complaint also makes the following allegations with respect to STi's finances and insolvency during the time period within which the alleged STi Transfers were made:

- "In June 2007, STi had total assets of approximately $142.6 million and approximately $106.2 million in total liabilities, with a total equity per STi's books and records of approximately $36.4 million. . . . [But this] total equity calculation for June 2007 appears to include phantom assets [because] STi recorded total equity of approximately $36.4 million[, b]ut within the next quarter, adjustments were made to these assets that cause liabilities in excess of adjusted assets resulting in a deficit. The sudden disappearance of these assets from STi's books and records indicates that those accounts were either overstated

or incorrect as of June 2007. . . . As such, STi was, on information and belief, insolvent as of June 2007." (*Id.* ¶¶ 42–44.)

- "[B]y November 2007, STi's books and records confirm that it was insolvent. For example, as of November 2007, STi had total assets of approximately $83.0 million and total liabilities of approximately $100.3 million, for a total negative equity of approximately $12.8 million." (*Id.* ¶ 45.)

- "By July 2008, STi's negative equity increased to a deficit of $13.9 million, and by December 2008 had increased even further to a deficit of $16.8 million." (*Id.* ¶ 47.)

According to the Complaint, (1) "STi was insolvent" at the time the November 2007 transfer was made to Baldwin (*id.* ¶ 50); (2) "STi had sunk even deeper into insolvency" by the time it made the July 2008 transfer to Baldwin (*id.* ¶ 51); and (3) STi's "insolvency had deepened even further" by the time it made the December 2008 transfer to Baldwin (*id.* ¶ 52).

The Complaint alleges that the STi Transfers "upon information and belief, constituted an ongoing and continuing disregard to Defendants' fiduciary obligations to STi and STi's stakeholders, including STi's creditors, in connection with their ownership, control, management, and operation of STi." (*Id.* ¶ 61.)

> *3.    The Acquisition Payments*

On October 14, 2010, Vivaro acquired STi from Baldwin[3] for a purchase price of $20 million (the "Acquisition"). (*Id.* ¶ 62.) To effect the Acquisition, Vivaro made an initial cash payment to Baldwin in the amount of $600,000 (the "Cash Payment") and executed a note, guaranteed by STi, in the amount of $19.4 million owed to Baldwin (the "Note"). (*Id.* ¶ 63.) Under the original repayment schedule of the Note, Vivaro was obligated to pay Baldwin monthly installments in the amount of $600,000. (*Id.* ¶ 68.)

---

[3]    The Complaint does not appear to clearly allege how and when Baldwin obtained an ownership interest in Debtor STi such that the purchase of STi would be from Baldwin. The Complaint also does not allege how much of an interest, if any, Baldwin had in STi at the time the purchase was made.

6

The Complaint alleges that the Debtors' books and records evince that "both on a standalone entity and on a consolidated basis, Vivaro and STi were both insolvent at the time of the Acquisition and thereafter." (*Id.* ¶ 64.)  It also alleges that Vivaro was unable to make timely payments on the Note under the original repayment schedule as early as within a few months of the Acquisition.  (*Id.* ¶¶ 65–66.)  As a result, Baldwin and Vivaro made numerous amendments to the repayment schedule of the Note.  (*Id.* ¶ 67.)  One such amendment was made for the duration of March 2011 through May 2011, under which Baldwin agreed to accept payments of just $100,000 per month, with payments to increase back to the original amount of $600,000 per month in June 2011.  (*Id.* ¶ 68.)

The Complaint alleges that by late 2011, both Vivaro and STi "continued to experience serious liquidity issues" and continued to fall behind on the Note payments.  (*Id.* ¶ 69.)  At this time, STi, the guarantor of the Note, was funding the Note payments, not Vivaro.  (*Id.*)  Baldwin then agreed to accept the sum of $7 million in full and final satisfaction of the Note.  (*Id.* ¶ 75.)

To continue to satisfy the payments under the amended Note schedules and/or pay the lump sum in satisfaction of the Note, in December 2011, STi entered into an agreement with The Receivables Exchange ("TRE") to monetize its accounts receivable from approximately ten customers by auctioning them at a rate of 85% of their face value.  (*Id.* ¶ 71.)  Under the TRE agreement, TRE was to receive pools of receivables to be sold or financed by multiple lenders as needed on a daily basis and TRE would maintain control of a lockbox account into which STi's customers would deposit remittances.  (*Id.* ¶¶ 72–73.)  Any collections that were received would first pay back the lenders, and then, after withholding applicable fees and interest, the balance would be remitted to STi.  (*Id.* ¶ 74.)  As a result of the TRE transaction, in December 2011, STi

caused TRE to pay Baldwin the sum of $7 million from proceeds of the factored receivables that would otherwise be due to STi.  (*Id.* ¶ 75.)

Through the Cash Payment, monthly Note payments, and the final lump sum payment, Baldwin received approximately $12.4 million in satisfaction of the Note.  (*Id.* ¶ 76; *see also id.* ¶ 78 & Figure 2 (schedule of payments made by Vivaro and/or STi to Baldwin in satisfaction of the Note).)

### C.    Causes of Action

The Complaint asserts the following six causes of action:  (1) avoidance of the STi Transfers as fraudulent conveyances pursuant to Bankruptcy Code section 544 and New York Debtor and Creditor Law ("NYDCL") sections 273 and 274 ("Count I," *id.* ¶¶ 80–87); (2) avoidance of Vivaro's Note obligation as a fraudulent obligation under Bankruptcy Code sections 544 and 548(a)(1)(B) and NYDCL sections 273 through 275 ("Count II," *id.* ¶¶ 88–94); (3) avoidance of STi's guaranty obligation as a fraudulent obligation under Bankruptcy Code section 544 and 548(a)(1)(B) and NYDCL sections 273 through 275 ("Count III," *id.* ¶¶ 95–102); (4) avoidance of the Cash Payment and the Note payments as fraudulent transfers under Bankruptcy Code sections 544 and 548(a)(1)(B) and NYDCL sections 273 through 275 ("Count IV," *id.* ¶¶ 103–110); (5) recovery of property under Bankruptcy Code sections 550 and 551 and NYDCL sections 278 and 279 ("Count V," *id.* ¶¶ 111–116); and (6) avoidance and recovery of the STi Transfers as actual fraudulent transfers under Bankruptcy Code sections 544, 548(a)(1)(A), 550, and 551 and NYDCL sections 276, 276-a, 278, and 279 ("Count VI," *id.* ¶¶ 117–127).

### D.    The Motion

The Moving Defendants move to dismiss the Complaint in its entirety on two grounds: timeliness and failure to state a claim.  With respect to timeliness, the Moving Defendants argue that to the extent Claim VI is based on Bankruptcy Code section 548(a)(1)(A), the cause of action's two year statute of limitations bars any avoidance of the STi Transfers made in 2007 and 2008.  (*Id*. at 16.)  The Moving Defendants further argue that Claim I and the remainder of Claim VI, based on the NYDCL, are subject to the three-year statute of repose articulated in New York Limited Liability Company Law ("NY LLC Law") section 508(a), which applies to LLC member distributions.  (*Id.* at 16.)

With respect to failure to state a claim, the Moving Defendants first attack Counts I through V of the Complaint, asserting that the Complaint fails to allege adequate facts to sustain any of the five constructive fraudulent conveyance claims.  (Motion at 7–14.)  According to the Moving Defendants, (1) Count I fails because the Complaint does not sufficiently allege that the STi Transfers were not made for reasonably equivalent value or that STi (a) was insolvent at the time of the transfers, (b) rendered insolvent as a result of the transfers, or (c) left with unreasonably small capital as a result of the transfers (*id.* at 7–12); (2) Counts II, III, and IV, regarding the Acquisition and Acquisition Payments, fail because the Complaint similarly fails to allege insolvency or a lack of fair consideration (*id.* at 12–14); and (3) Count V should be dismissed because it is dependent upon Counts I through IV (*id.* at 14).  As to Count VI, the Moving Defendants assert that it should be dismissed because the Complaint fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which applies to actual fraudulent conveyance claims.  (*Id.* at 14–16.)

The Motion also asserts that the Complaint fails to state any claim against Defendants Leucadia, BEI Prepaid, BEI Prepaid Holdings, or Phlcorp (the "Transferee Defendants") (or any of the individual defendants that are no longer subject to the lawsuit) because there are no allegations that any of these particular entities participated in any actual or constructive fraud. (*Id.* at 18–20.)  According to the Moving Defendants, the Complaint does not include allegations that any of these entities actually received a direct transfer of any funds paid by STi and as such cannot be considered "transferees" as defined by law.  (*Id.* at 19.)  The Moving Defendants argue that the Complaint merely alleges "on information and belief" that these entities may have received funds from the transfers and "to the extent" that they did, those transfers are avoidable. (*Id.* at 20 (citing Compl. ¶¶ 38–40; 54–56).)

### E.    The Opposition

The Plaintiff specifically withdraws all claims against the individual defendants (as indicated above).  (Opp. at 24.)  As to the claims against the remaining Moving Defendants, the Plaintiff first argues that neither Count I nor Count VI is barred by any statute of limitations or statute of repose.  (Opp. at 20–22.)  According to the Plaintiff, both claims are based on the Bankruptcy Code and the NYDCL and are not barred by the NYDCL's six-year statute of limitations.  (*Id.* at 20–21.)  The Plaintiff further asserts that the NY LLC Law statute of repose does not apply because all of the transfers at issue are alleged as transfers to Defendant Baldwin, which is not an LLC member of STi.  (*Id.* at 21–22.)

The Plaintiff also responds to each of the Moving Defendants' arguments with respect to failure to state a claim.  The Plaintiff asserts:  (1) Count I sufficiently alleges that the STi Transfers were not made for reasonably equivalent value and that STi was insolvent at the time of the transfers or rendered insolvent as a result of the transfers (*id.* at 8–14); (2) Counts II, III,

and IV, regarding the Acquisition Payments, sufficiently allege insolvency and a lack of fair

consideration (*id.* at 14–17); (3) Count V is sufficient for the same reasons Counts I through IV

are sufficient (*id.* at 17); and (4) Count VI sufficiently alleges the requisite intent for a claim of

actual fraudulent conveyance under the NYDCL (*id.* at 17–20).

The Plaintiff further asserts that the Complaint adequately alleges a fraudulent

conveyance claim against Defendants Leucadia, BEI Prepaid, BEI Prepaid Holdings, and

Phlcorp as transferees because the Complaint alleges that they "participated in" and "had

dominion and control over the relevant assets."  (*Id.* at 24.)

Alternatively, the Plaintiff requests leave to amend the Complaint should the Court find

that the Complaint is insufficient as it currently stands.  (*Id.* at 25.)

## F.      The Reply

The Moving Defendants first point out that the Plaintiff has attempted to amend its

Complaint by alleging new facts in its Opposition.  (Reply at 1.)  According to the Moving

Defendants, the Plaintiff includes new figures related to the alleged insolvency of STi that were

not contained in the Complaint (*id.* (citing Opp. n.6)), and includes additional facts in support of

its actual fraudulent conveyance claim in order to allege the presence of "badges of fraud" (*id.*

(citing Opp. ¶¶ 52–53)).  The Moving Defendants then reiterate and supplement the arguments

made in their Motion with respect to statute of limitations, statute of repose, and failure to state a

claim.  (*Id.* at 2–11.)

## II.    <u>DISCUSSION</u>

### A.    Standard on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a

complaint need only allege "enough facts to state a claim for relief that is plausible on its face."

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is

not akin to a probability requirement," but rather requires "more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss.  *Pension Benefit*

*Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that motion

to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working principles'")

(quoting *Iqbal*, 556 U.S. at 678–79; *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*,

420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).  First, the court must accept all factual

allegations in the complaint as true, discounting legal conclusions clothed in factual garb.  *See,*

*e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir.

2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in

the complaint to be true") (citing *Iqbal*, 556 U.S. at 678).  Second, the court must determine if

these well-pleaded factual allegations state a "plausible claim for relief."  *Iqbal*, 556 U.S. at 679

(citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

(citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation

omitted).  A complaint that pleads only facts that are "merely consistent with a defendant's

liability" does not meet the plausibility requirement.  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although a plaintiff may plead facts "on information and belief," "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded,'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)).

For claims sounding in fraud, a plaintiff "must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  Federal Rule of Civil Procedure 9(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties."  *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Technologies Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).  To satisfy this heightened pleading requirement, a complaint cannot rely on "conclusory allegations that defendant's conduct was fraudulent or deceptive . . . ."  *Id.* (internal quotation marks and citation omitted).

### B. STi Transfer Claims – Counts I & VI

*1. Timeliness*

The Defendants challenge the timeliness of Counts I and VI, which are grounded in allegations relating to the STi Transfers allegedly made in 2007 and 2008.  According to the Defendants, Count VI  is time barred under section 548(a)(1) to the extent the claim is based on the Bankruptcy Code and both Counts I and VI are time barred under NY LLC Law section 508(c) to the extent the claims rely on the NYDCL.  (Motion at 16–18.)

The Moving Defendants are correct, and the Plaintiff appears to concede, that Count VI is time barred to the extent it is grounded in the Bankruptcy Code.  A claim to avoid a fraudulent conveyance asserted under section 548(a) of the Bankruptcy Code may only be asserted against transfers that were "made or incurred [by the debtor] within 2 years before the date of the filing of the petition."  11 U.S.C. § 548(a)(1).  The Debtors filed their chapter 11 petition on September 5, 2012.  (*See* ECF Doc. # 1.)  The challenged STi Transfers occurred in 2007 and 2008—more than two years prior to 2012.  The Court therefore **GRANTS** the Motion and **DISMISSES** the section 548-based portion of Count VI as time barred.

As for the remaining NYDCL bases for Counts I and VI, the parties dispute whether a six year or three year statute of limitations or repose, respectively, applies.  Generally, a constructive or actual fraudulent conveyance claim brought pursuant to the NYDCL is subject to a six year statute of limitations.  *Bd. of Managers of Chocolate Factory Condo. ex rel. Chocolate Factory Condo. v. Chocolate Partners, LLC*, 43 Misc. 3d 1223(A), 2014 WL 1910237, at *11 (N.Y. Sup. Ct. May 13, 2014) (citing cases).  The Plaintiff argues that this six year time period applies, and as such, its claims were timely asserted.  The Moving Defendants argue that the STi Transfers

14

made to Defendant Baldwin were "distributions" to STi's LLC "members" and therefore require

the application of the NY LLC Law section 508(c) statute of repose.

Section 508(c) states:

> Unless otherwise agreed, a member who receives a wrongful
> distribution from a limited liability company shall have no liability
> under this article or other applicable law for the amount of the
> distribution after the expiration of three years from the date of the
> distribution.

N.Y. LTD. LIAB. CO. LAW § 508(c).  This statute of repose overrides the six year statute of

limitations normally applied to NYDCL fraudulent conveyance claims, provided that the

transfers at issue were in fact distributions made by the LLC to LLC members.  *See Bd. Of*

*Managers of Chocolate Factory Condo.*, 2014 WL 1910237, at *12; *Mostel v. Petrcki*, 25 Misc.

3d 929, 932 (N.Y. Sup. Ct. Sept 2, 2009).

Under the NY LLC Law, a "member" is defined as:

> a person who has been admitted as a member of a limited liability
> company in accordance with the terms and provisions of this
> chapter and the operating agreement and has a membership interest
> in a limited liability company with the rights, obligations,
> preferences and limitations specified under this chapter and the
> operating agreement.

N.Y. LTD. LIAB. CO. LAW § 102(q).

The NY LLC Law defines a "distribution" as "the transfer of property by a limited

liability company to one or more of its members in his or her capacity as a member."  *Id.*

§ 102(i).  STi's LLC Agreement provides a slightly more robust definition for "distribution" as

follows:

> Distributions means distributions of money or other property made
> by the Company with respect to Units or other securities (if any) of
> the Company.  All Distributions shall be made otherwise provided
> in this Agreement or agreed upon by all of the Members of such
> class.  Distributions shall not include the payment of money or

> other property to holders of Units or other securities of the
> Company for reasons or in any capacity other than their ownership
> of such Units or securities.

(Compl. ¶ 57 (quoting the STi LLC Agreement).)

The Moving Defendants assert that the Complaint makes mere allegations "on information and belief" that the transfers were made to Defendant Baldwin that are insufficient to establish that the transfers are not "distributions" to STi's LLC members.  (Motion at 16–18.) The Plaintiff responds that the Complaint does not allege that Defendant Baldwin was a "member" of the STi LLC and does not allege that the STi Transfers were made to any "members" of the LLC.  (Opp. ¶ 60.)  The Plaintiff argues that even if Baldwin were a "member" of the LLC, the STi transfers were not "distributions" because they were not dividend payments, a return of capital, or any other transfer made "with respect to Units or other securities of STi Prepaid."  (Opp. ¶ 61 (citing Compl. ¶ 60).)  The Plaintiff further asserts that to the extent the statute of repose does apply, there is a factual issue whether equitable tolling should be applied that cannot be resolved on a motion to dismiss.  (Opp. ¶ 62.)  The Moving Defendants' Reply appears to allege that Defendant Baldwin was a "member" of the STi LLC in 2007 and 2008, though the allegations in the Complaint do not appear to be consistent with this assertion (*see* Reply at 2 (citing Compl. ¶¶ 36–39)), and the Moving Defendants seemed to abandon this assertion at oral argument.  The Reply also asserts that as a matter of law, equitable tolling is not available because unlike a statute of limitations, a statute of repose is absolute and cannot be subject to equitable tolling.  (*Id.* at 7–8.)

The following allegations of the Complaint support the Plaintiffs' argument that Baldwin was not a LLC "member" of STi and that the STi Transfers were not "distributions":

- "At all relevant times, Baldwin was a wholly-owned subsidiary of Leucadia." (Compl. ¶ 12.)

16

- "Defendant [BEI Prepaid Holdings] is a limited liability company organized under the laws of the State of Delaware, and at all times relevant to this Complaint was a 90% owned subsidiary of Baldwin and 90% member of BEI." (*Id.* ¶ 14.)

- "The STi Transfers were, on information and belief, transfer of money directly from STi to Baldwin."  (*Id.* ¶ 58.)

- "Baldwin, however, was not a member of STi.  Rather, it was BEI [Prepaid], not Baldwin, that was a member of STi."  (*Id.* ¶ 59.)

- "None of the STi Transfers are either a dividend payment, a return of capital, or any other transfer made 'with respect to Units or other securities' of STi, and therefore the STi transfers were not distributions to its members in accordance with STi's LLC Agreement."  (*Id.* ¶ 60.)

- "[T]here was no legitimate purpose for the STi transfers other than to benefit Defendants."  (*Id.* ¶ 124.)

The Complaint, however, also includes the following inconsistent allegation:

> While Leucadia and Baldwin were . . . some layers removed from BEI [Prepaid] (STi's majority member), on information and belief, it was Baldwin that was the initial recipient of any monetary transfers that STi paid to its members.

(*Id.* ¶ 37.)

Taking the allegations in the Complaint as true, Defendant Baldwin is not a LLC "member" of STi and therefore any transfers made to Baldwin cannot necessarily be presumed to be "member distributions."  (*Id.* ¶ 59.)  Whether the challenged STi Transfers were in fact "distributions" made to STi's LLC "members" via Defendant Baldwin, an intermediary recipient, is a disputed issue of fact that cannot be resolved on a motion to dismiss.  The Court **DENIES** without prejudice the Motion to dismiss Count I and the NYDCL-based portion of Count VI as time barred.

17

2.    *Sufficiency of Count I*

Count I pleads a constructive fraudulent conveyance claim under NYDCL sections 273 and 274.  The Moving Defendants argue that the Plaintiff fails to assert a cause of action under either of these provisions because the Complaint does not sufficiently allege that the STi Transfers were not made in exchange for fair consideration or that STi was insolvent at the time the STi Transfers were made or thereby rendered insolvent as a result.  (Motion at 7–12.)  Since Count I is a constructive fraudulent transfer claim, the "plausibility" standard under Federal Rule of Civil Procedure 8 applies, and courts using this standard "in the constructive fraudulent transfer context [have found] that the plaintiff does not need to plead specific facts to support the relevant allegations." *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 646 (Bankr. S.D.N.Y. 2009).  Allegations of both a lack of fair consideration and insolvency are required to assert a claim under NYDCL section 273.  *See* N.Y. DEBT. & CRED. LAW § 273.  Under NYDCL section 274, a plaintiff must plead a lack of fair consideration and that the transfers left the debtor with unreasonably small capital.  *See id.* § 274.

With respect to the issue of fair consideration, "[t]o defeat a motion to dismiss, the [plaintiff] need only allege a lack of 'fair consideration' by pleading a lack of 'fair equivalent' value *or* a lack of good faith on the part of the transferee." *Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 443 (Bankr. S.D.N.Y. 2011) (emphasis in original).  Courts use the term "fair consideration" interchangeably with "reasonably equivalent value," relevant in Bankruptcy Code section 548 fraudulent transfer claims, when examining constructive fraud claims. *Estate of Ruffini v. Norton Law Grp. PLLC (In re Ruffini)*, Adv. Proc. No. 12-8396, 2014 WL 714732, at *7 (Bankr. E.D.N.Y. Feb. 25, 2014).  The only difference is that the state

law concept of "fair consideration" also includes an examination of good faith—meaning that "reasonably equivalent value" is essentially the same as "fair equivalent value." *Id.*

The question of reasonably equivalent value is based on the "facts and circumstances of each case" and requires the court to "compare what was given with what was received." *In re Ruffini*, 2014 WL 714732, at *7; *see also Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*, 507 B.R. 452, 470 (Bankr. S.D.N.Y. 2014) ("Whether the debtor received 'reasonably equivalent value' for the alleged fraudulent transfer is ordinarily a question of fact."); *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 466 (S.D.N.Y. 2001) ("[G]enerally[,] whether a transfer is for 'reasonably equivalent value' is largely a question of fact . . . ."). Courts consider "the good faith of the parties, whether it was an arm's length transaction, and what the debtor actually received." *In re Ruffini*, 2014 WL 714732, at *7.

With regard to insolvency under NYDCL section 273, an entity is insolvent when the "present fair salable value of [the debtor's] assets is less than the amount that will be required to pay [the debtor's] probable liability on [its] existing debts as they become absolute and matured." N.Y. DEBT. & CRED. LAW § 271(1). Insolvency is measured from the point at which the transfers took place and therefore "cannot be presumed from subsequent insolvency at a later point in time." *O'Toole v. Karnani (In re Trinsium Grp.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011). To evaluate the sufficiency of a complaint's insolvency allegations, the court looks for

> some sort of 'balance sheet' test or information provided that the [c]ourt can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place. The 'present fair salable value of [] assets' requires there to be an evaluation of the market value of the assets at the time the transfers took place. Additionally, there should be information as to the level of liquidity of the transferor's assets. Often, there is valuation provided of a company's assets or probable liabilities when trying to prove this element.

*Id.* (holding that complaint providing net income figures, net cash flow figures, and revenue decline percentage figures for 2003 through 2008 did not sufficiently allege the debtors were insolvent at time of or rendered insolvent by alleged fraudulent transfers). If the absence of fair consideration is properly alleged, then the court may presume insolvency, *id.* at 393, and the burden shifts to the defendants to rebut it, *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013).

By contrast, no such presumption exists for NYDCL section 274 claims. *See id.* Instead, the plaintiff must plead facts asserting that the transfers left the debtor with unreasonably small capital regardless of whether the plaintiff sufficiently pleads a lack of fair consideration. *See id.*

> Th[e unreasonably small capital] test denotes a financial condition short of equitable insolvency, and "is aimed at transferees that leave the transferor technically solvent but doomed to fail." The relevant factors include the transferor's debt to equity ratio, historical capital cushion, and the need for working capital in the transferor's industry.

*Id.*

Here, the Plaintiff alleges the following facts with respect to the STi Transfers at issue in Count I (and Count VI):

- "The first set of transfers was from STi to Baldwin in 2007 – 2008 when, on information and belief, STi was already insolvent. Specifically, there were four transfers totaling approximately $37 million: (a) $15 million in June 2007; (b) $12 million in November 2007; (c) $5 million in July 2008; and (d) $5 million in December 2008. On information and belief, STi was insolvent when these transfers were made." (Compl. ¶ 1.)

- "Examination of the books and records of STi under Leucadia's ownership, which lasted from March 2007 through October 2010, shows a company in financial decline." (*Id.* ¶ 41.)

- "In June 2007, STi had total assets of approximately $142.6 million and approximately $106.2 million in total liabilities, with a total equity per STi's books and records of approximately $36.4 million." (*Id.* ¶ 42.)

- "However, the total equity calculation for June 2007 appears to include phantom assets. In June 2007, STi recorded total equity of approximately $36.4 million. But, within the next quarter, adjustments were made to these assets that caused liabilities to be in excess of adjusted assets resulting in a deficit. The sudden disappearance of these assets from STi's books and records indicates that those accounts were either overstated or incorrect as of June 2007." (*Id.* ¶ 43.)

- "As such, STi was, on information and belief, insolvent as of June 2007." (*Id.* ¶ 44.)

- "In any event, five months later, by November 2007, STi's books and records confirm that it was insolvent. For example, as of November 2007, STi had total assets of approximately $83.0 million and total liabilities of approximately $100.3 million, for a total negative equity of approximately $12.8 million." (*Id.* ¶ 45.)

- "After November 2007, STi's insolvency only deepened." (*Id.* ¶ 46.)

- "By July 2008, STi's negative equity increased to a deficit of $13.9 million, and by December 2008 had increased even further to a deficit of $16.8 million. (*Id.* ¶ 47.)

- "Notwithstanding STi's insolvency, it made repeated transfers directly to Baldwin." (*Id.* ¶ 48.)

- "On June 5, 2007, STi transferred $15.0 million via a Fedwire debit to "Baldwin Enterprises," which on information and belief refers to Baldwin." (*Id.* ¶ 49.)

- "On November 5, 2007 (when as explained above, STi was insolvent), STi transferred an additional $12.0 million to Baldwin." (*Id.* ¶ 50.)

- "In addition, on July 22, 2008, (by which time, as explained above, STi had sunk even deeper into insolvency), STi transferred an additional $5.0 million to Baldwin." (*Id.* ¶ 51.)

- "Finally, on December 31, 2008, STi (at a point by which its insolvency had deepened even further) transferred an additional $5.0 million via a book transfer debit directly to "Baldwin Enterprises Inc Salt Lake City UT." (*Id.* ¶ 52.)

- "In Sum, in 2007 and 2008, there were four known transfers of money made from STi to Baldwin while STi was, on information and belief, insolvent . . . ." (*Id.* ¶ 53.)

- "STi did not receive fair consideration or value in exchange for any of the STi Transfers." (*Id.* ¶ 84.)

- "STi was insolvent at the time of, or became insolvent as a result of, the STi Transfers." (*Id.* ¶ 85.)

- "STi was left with unreasonably small capital because of the STi Transfers." (*Id.* ¶ 86.)

- "Defendants Leucadia and Baldwin, among others, had actual knowledge that STi was insolvent in or about June 2007 and thereafter." (*Id.* ¶ 120.)

- "Baldwin and Leucadia knew that STi's insolvency was deepening, as discussed above." (*Id.* ¶ 121.)

- "As alleged above, Defendants received benefit from the STi Transfers." (*Id.* ¶ 123.)

- "At the time of the STi Transfers, Defendants Baldwin and Leucadia, among others, not only knew of STi's insolvency but also there was no legitimate purpose for the STi Transfers other than to benefit Defendants." (*Id.* ¶ 124.)

- "Defendants Baldwin and Leucadia, among others, also knew that the STi Transfers left STi unable to fulfill its obligations to its creditors and made the STi Transfers with the actual intent to hinder, delay, or defraud creditors." (*Id.* ¶ 125.)

Based on these allegations, the Complaint adequately alleges that STi did not receive fair consideration in exchange for the money it transferred to Defendant Baldwin. (*See, e.g.*, *id.* ¶ 84.) The Complaint not only provides a conclusory allegation that there was no fair consideration provided in exchange for the STi Transfers, but also provides that "there was no legitimate purpose for the STi Transfers other than to benefit Defendants." (*Id.* ¶ 124.) The Complaint further alleges the dates upon which the four specific transfers were made, the specific amount of each transfer, the entity to whom each transfer was made, and that the Debtors' books and records formed the basis of the Plaintiff's claims to avoid the STi Transfers (i.e. factual support). (*See id.* ¶ 41.) The Court therefore **DENIES** the Motion to the extent it asserts that the Complaint fails to sufficiently allege a lack of fair consideration in Count I.[4]

---

[4]    The allegations in Count I as to whom the payments were made are sufficient against Defendant Baldwin only. The sufficiency of the allegations in Count I and the other claims against the Transferee Defendants is discussed further below.

22

The Court's conclusion that fair consideration is sufficiently alleged activates the rebuttable presumption that the insolvency element of the NYDCL section 273 portion of Count I is sufficiently pled. *See In re Operations NY LLC*, 490 B.R. at 98. In any event, the Complaint sets forth several allegations that STi's assets were less than its liabilities, thereby sufficiently providing allegations relevant to the "balance sheet test" for June 2007 and November 2007. (*See* Compl. ¶¶ 42–46.) The allegations for July and December 2008, however, merely provide "negative equity" figures and assert that the deficit demonstrates STi's insolvency at the time the second two STi Transfers were made. (*Id.* ¶ 47.) Similar net figures, without the underlying figures upon which they were based, were previously rejected as inadequate to withstand a motion to dismiss for failure to state a claim. *See In re Trinsium Grp.*, 460 B.R. at 392. The Motion is therefore **GRANTED** with leave to amend to the extent it addresses the sufficiency of the insolvency and unreasonably small capital allegations with respect to the July and December 2008 STi Transfers at issue in Count I.

### 3.   *Sufficiency of Count VI*

The remainder of Count VI asserts an actual fraudulent conveyance claim with respect to the STi Transfers pursuant to NYDCL section 276. (Compl ¶¶ 117–127.) The parties agree that the heightened Federal Rule of Civil Procedure 9(b) pleading standard applies to Count VI. (*See* Motion at 14–16; Opp. ¶¶ 50–53.) The Moving Defendants assert that the Complaint fails to satisfy this standard in alleging STi's insolvency and an "intent to hinder, delay or defraud" creditors. (Motion at 14–16.)

A complaint need not plead insolvency to successfully allege an actual fraudulent conveyance claim under the Bankruptcy Code or the NYDCL. *See* 11 U.S.C. § 548(a)(1)(A); N.Y. DEBT. & CRED. LAW § 276; *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia*

*Commc'ns Corp.*), 365 B.R. 24, 34–35 (Bankr. S.D.N.Y. 2007).  Thus, the Complaint's

insolvency allegations (or lack thereof) are irrelevant to the sufficiency of Count VI.

The Motion then rests on the argument that Count VI fails to adequately allege fraudulent

intent.  Although allegations of fraudulent intent are required under these actual fraudulent

conveyance statutes, courts recognize the difficulty in providing direct proof of intent, and

instead allow plaintiffs to provide allegations that amount to circumstantial evidence from which

the requisite intent may be inferred.  *See, e.g.*, *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574,

1582 (2d Cir. 1983); *Camofi Master LDC v. Riptide Worldwide, Inc.*, No. 10 Civ. 4020 (CM),

2011 WL 1197659, at *11 (S.D.N.Y. 2011); *In re Arctrade Fin. Techs. Ltd.*, 337 B.R. at 809;

*Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006).  Under New York law, such

circumstantial evidence is known collectively as the "badges of fraud," and may include:  a close

relationship between the parties to the conveyance; inadequacy of consideration received;

retention of control of the property by the transferor; suspicious timing of the conveyance after

the debt was incurred; the use of fictitious parties; information that the transferor was insolvent

as a result of the conveyance; the existence or cumulative effect of a pattern or series of

transactions or course of conduct after the incurring of debt, onset of financial difficulties, or

pendency or threat of suits by creditors; the general chronology of the events and transactions

under inquiry; a questionable transfer not in the usual course of business; and the secrecy, haste,

or unusualness of the transaction.  *See In re Kaiser*, 722 F.2d at 1582 (quoting 4 COLLIER ON

BANKRUPTCY ¶ 548.02[5] (15th ed. 1983)); *Camofi Master LDC*, 2011 WL 1197659, at *11

(citing cases); *In re Arctrade Fin. Techs. Ltd.*, 337 B.R. at 809 (citing cases); *Drenis*, 452 F.

Supp. 2d at 429.  "[T]he existence of several badges of fraud can constitute clear and convincing

evidence of actual intent."  *In re Arctrade Fin. Techs. Ltd.*, 337 B.R. at 809.  "[A] 'strong

inference of fraudulent intent "may be established either (a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness.""""

*Weisfelner v. Fund 1. (In re Lyondell Chem. Co.)*, 503 B.R. 348, 390 (Bankr. S.D.N.Y. 2014).  In

undertaking this analysis, the court need only focus on whether the complaint sufficiently pleads

fraudulent intent on the part of the transferor—in this case Debtor STi.  *In re Dreier LLP*, 452

B.R. at 423–36.

 The Complaint alleges sufficient facts relating to two similar badges of fraud:  (1)

allegations that STi (the transferor) was insolvent at the time the STi Transfers were made,

though only in June and November 2007 (*see* Compl. ¶¶ 1, 41–48); and (2) allegations of the

existence or cumulative effect of a series of transactions or course of conduct after the onset of

financial difficulties (*see id.* ¶¶ 41–53, 120–25 (alleging STi's deepening insolvency during the

period of time the STi Transfers were made)).  But the Complaint does not provide allegations

sufficiently alleging any other badges of fraud that would meet Rule 9(b)'s "particularity"

requirements.  For example, the Complaint alleges that no consideration was received in

exchange for the STi Transfers, but fails to allege "the factual basis for the belief that these

transfers were made without fair consideration."  *Safety-Kleen Sys., Inc. v. Silogram Lubricants

Corp.*, No. 12-cv-4849 (ENV) (CLP), 2013 WL 6795963, at *9 (E.D.N.Y. Dec. 23, 2013).

Similarly, the Complaint includes several allegations that Defendants Leucadia and Baldwin had

actual knowledge of STi's insolvency and that the STi Transfers would exacerbate that

insolvency, but caused the STi Transfers to be made in spite of that knowledge.  (*See id.* ¶¶ 121–

25.)  Although "[k]nowledge to a substantial certainty constitutes intent in the eyes of the law . . .

and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual

intent to defraud them," *Drenis*, 452 F. Supp. 2d at 429 (quoting *Terry v. June*, 432 F. Supp. 2d

635, 639–40 (W.D. Va. 2006)), the Plaintiff fails to allege "why Plaintiff believes these transfers

to [the Defendants] occurred" or the "factual basis for the belief" that the Defendants had the

knowledge the Plaintiff says they did, *see Safety-Kleen Sys., Inc.*, 2013 WL 6795963, at *9.

Without adequately alleging that the Defendants possessed an influence over STi such

that they had the "ultimate opportunity to do the resulting damage" to STi's finances, the

Plaintiff also fatally focuses on the intent of Leucadia and Baldwin when it is STi's intent as the

transferor that is relevant—not the intent of the transferees. *See In re Dreier LLP*, 452 B.R. at

423–36.  Here, the mere allegations of each Defendant's direct or indirect ownership interests in

STi without more are insufficient.  (*See Compl.* ¶¶ 1, 38, 54, 123–124; *see also id.* ¶¶ 12–15, 35–

36 (alleging the corporate control and ownership structure of the defendants and STi).)  As such,

the Court **GRANTS** the Motion and **DISMISSES** Count VI without prejudice.

### C.    The Acquisition Payments Claims – Counts II, III, & IV

Counts II, III, and IV of the Complaint seek to avoid payments made and obligations

incurred through Vivaro's Acquisition of STi.  (Compl. ¶¶ 88–110.)  More specifically, Count II

seeks to avoid Vivaro's $19.4 million Note obligation (*id.* ¶¶ 88–94); Count III seeks to avoid

STi's guaranty of that Note obligation (*id.* ¶¶ 95–102); and Count IV seeks to recover payments

Defendant Baldwin received from Vivaro and STi pursuant to the Note, totaling $11.875 million,

and the initial Cash Payment by Vivaro of $600,000 (*id.* ¶¶ 103–110).  Similar to Count I, these

three claims are asserted as constructive fraudulent conveyance claims under various provisions

of the Bankruptcy Code and the NYDCL.  (*Id.* ¶¶ 88–110.)  As such, the "plausibility" pleading

standard of Rule 8(a) applies, rather than the heightened "particularity" standard of Rule 9(b).

*See In re Arctrade Fin. Techs. Ltd.*, 337 B.R. at 801–02.  The Moving Defendants argue for the

dismissal of each of these three claims because the Complaint fails to adequately allege that (1)

the Debtors did not receive reasonably equivalent value or fair consideration in exchange for the

payments made and obligations incurred, and (2) Vivaro and STi were insolvent at the time the

Acquisition occurred and the challenged payments were made (i.e. 2010 through 2011).  (Motion

at 12–14.)

Turning to the Moving Defendants' first argument, the Complaint provides the following

allegations relating to the lack of reasonably equivalent value or fair consideration received by

Vivaro and STi in exchange for the Note and guaranty obligations and payments at issue in

Counts II through IV:

- "Vivaro, which purchased the membership interests of STi, an insolvent company, did not receive either reasonably equivalent value or fair consideration in exchange for the Cash Payment, the Note, or the Note Payments.  STi, whose membership interests were transferred pursuant to the Acquisition, did not receive reasonably equivalent value or fair consideration in exchange for the Guaranty or the Note Payments and was left with unreasonably small capital."  (Compl. ¶ 4.)

- "STi was insolvent at the time of the Acquisition, and therefore Vivaro did not receive reasonably equivalent value or fair consideration in exchange for incurring the Note obligation."  (*Id.* ¶ 90.)

- "STi did not receive reasonably equivalent value or fair consideration in exchange for STi's obligation under the Guaranty because the Acquisition merely involved the transfer of STi's membership interests from one corporate parent to another corporate parent."  (*Id.* ¶ 98.)

- "Neither Vivaro nor STi received reasonably equivalent value or fair consideration in exchange for the Cash Payment or any of the Note Payments." (*Id.* ¶ 108.)

These allegations are insufficient to plead a lack of reasonably equivalent value or fair

consideration under Count II, seeking to avoid Vivaro's Note obligation, and the extent of Count

IV that seeks to claw back Vivaro's payments made pursuant to that Note obligation.  The Note

obligation is an antecedent debt, and any payments made on account of that Note obligation are

payments made on account of that antecedent debt and are "presumed [to be] made 'for value.'"
*See In re Trinsium*, 460 B.R. at 388–89 (holding that a note obligation is an antecedent debt and payments pursuant to that note obligations were payments made on account of that antecedent debt).  The Plaintiff fails to rebut this presumption with its mere conclusory allegations that Vivaro did not receive fair consideration.  (*See* Compl. ¶¶ 4, 90, 108.)  The Plaintiff further fails to rebut the presumption that the Acquisition was negotiated at arm's length, *see In re Trinsium*, 460 B.R. at 393; (*see also* Motion at 12–14; Reply at 4–6), because the Complaint is devoid of allegations regarding the negotiations that led to the Acquisition.

The Complaint also lacks facts regarding the "value" of the STi membership interests at the time of the Acquisition; nor does the Complaint include reasons why the Acquisition of STi could not have benefited Vivaro at that time.  (Motion at 14; Reply at 4–5.)  Without allegations regarding the value of the membership interests bought by Vivaro, it is impossible for the Court to evaluate whether the value paid or obligation incurred by Vivaro was not reasonably equivalent to those membership interests received.  *In re Trinsium Grp.*, 460 B.R. at 393 ("The notes were executed in exchange for the repurchase of company stock, but there are no facts in the pleading regarding how much the stock was worth at the time the transfers took place or how many shares of stock were transferred with respect to each promissory note.  Without this information, it is impossible for the Court to reasonably infer whether the transfer was for less than reasonably equivalent value."); *Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) ("[A]s a threshold matter, the Complaint must be dismissed because it fails to plead any facts concerning the value of Peter's membership interests as compared to the consideration received in exchange for them."); *see also Estate of Ruffini v. Norton Law Grp. PLLC (In re Ruffini)*, Adv. Proc. No. 12-8396, 2014 WL 714732, at *7 (Bankr. E.D.N.Y. Feb.

25, 2014) ("Courts consider "the good faith of the parties, whether it was an arm's length

transaction, and what the debtor actually received.").

      With respect to Count III and the extent of Count IV based on STi's guaranty obligation,

courts do not necessarily presume that a guarantor did or did not receive "value" in exchange for

guaranteeing a debt of a third party.  *See Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991

(2d Cir. 1981) ("[C]ourts have long recognized that '(t)ransfers made to benefit third parties are

clearly not made for a "fair" consideration,' and, similarly, that 'a conveyance by a corporation

for the benefit of an affiliate (should not) be regarded as given for fair consideration as to the

creditors of the conveying corporations.'  The cases recognize, however, that a debtor may

sometimes receive 'fair' consideration even though the consideration given for his property or

obligation goes initially to a third person." (citations omitted)); *see also Silverman v. Paul's*

*Landmark, Inc. (In re Nirvana Rest. Inc.)*, 337 B.R. 495, 505 (Bankr. S.D.N.Y. 2006) (noting

that precedent "does not stand for the proposition that a creditor gets 'fair value' simply by

throwing more money at one of its debtors in the hope of keeping it in business long enough to

repay part of the debt.").  Rather, in exchange for a guaranty of a parent's or subsidiary's debt

obligation, courts recognize that the guarantor may receive reasonably equivalent value or fair

consideration directly or indirectly.  *See id.* at 991–93 ("If the consideration given to the third

person has ultimately landed in the debtor's hands, or if the giving of the consideration to the

third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth

has been preserved, and s 67(d) has been satisfied-provided, of course, that the value of the

benefit received by the debtor approximates the value of the property or obligation he has given

up.  For example, fair consideration has been found for an individual debtor's repayment of loans

made to a corporation, where the corporation had served merely as a conduit for transferring the

loan proceeds to him.  Similarly, fair consideration will often exist for a novation, where the

debtor's discharge of a third person's debt also discharges his own debt to that third person."); *In

re Augie/Restivo Baking Co., Ltd.*, 87 B.R. 242, 247 (Bankr. E.D.N.Y. 1988) ("The theory that

consideration received by a parent will not support a transfer by a subsidiary does not represent

the law.  For purposes of the fraudulent conveyance provisions of the bankruptcy laws, indirect

benefits to a corporate parent can sustain a guaranty or pledge of assets of an affiliate against

attack.").  Whether "value" is in fact received by a debtor-guarantor like STi turns on whether

"the statutory purpose of conserving the debtor's estate for the benefit of creditors" is met.

*Rubin*, 661 F.2d at 992.

The Second Circuit has previously explained that a finding of reasonably equivalent

value consistent with this statutory purpose in the guaranty context

> requires that the present advance or antecedent debt be 'not
> disproportionately small as compared with the value of the
> property or obligation' given by the bankrupt to secure it.  In a
> three-sided transaction such as that presented here, it is not enough
> merely to compare the absolute amount of the third person's debt
> with the amount of security given by the bankrupt.  The trustee,
> who has the burden of proving that the transaction was 'without
> fair consideration', could establish lack of fair consideration under
> s 67(d) [of the Bankruptcy Act, or Bankruptcy Code section 548's
> predecessor,] by proving that the value of what the bankrupt
> actually received was disproportionately small compared to the
> value of what it gave.  Accordingly, the court must attempt to
> measure the economic benefit, if any, that accrued to each
> bankrupt as a result of the third person's indebtedness, and it must
> then determine whether that benefit was 'disproportionately small'
> when compared to the size of the security that that bankrupt gave
> and the obligations that it incurred.

*Id.* at 993; *see also In re Nirvana Rest. Inc.*, 337 B.R. at 503 (conducting a fact-specific analysis

of whether a guarantor received reasonably equivalent value under section 548 of the Bankruptcy

Code in exchange for a guarantee of a debt obligation of an affiliate); *Official Comm. of*

*Unsecured Creditors of RSL Com Primecall, Inc. v. Beckoff (In re RSL Com Primecall, Inc.)*, Nos. 01-11457 (ALG), 2003 WL 22989669, at *11 (Bankr. S.D.N.Y. Dec. 11, 2003) (conducting a similar fact-based analysis of whether a guarantor received reasonably equivalent value under section 548 of the Bankruptcy Code in exchange for guaranteeing a debt obligation of its parent when both the subsidiary and the parent were insolvent).

Although STi's receipt of reasonably equivalent value or fair consideration will largely be a disputed issue of fact that cannot be resolved on a motion to dismiss, *see In re Ruffini*, 2014 WL 714732, at *7 (holding that the question of reasonably equivalent value is based on the "facts and circumstances of each case"); *In re Jesup & Lamont, Inc.*, 507 B.R. at 470; *In re Adler, Coleman Clearing Corp.*, 263 at 466, the Plaintiff fails to allege any facts regarding what, if anything (or nothing), STi received in exchange for its guaranty of Vivaro's Note obligation. Without such information, the Court cannot conduct the requisite economic analysis.  *See Rubin*, 661 F.2d at 993; *see also In re Trinsium Grp.*, 460 B.R. at 393 ("Without this information, it is impossible for the Court to reasonably infer whether the transfer was for less than reasonably equivalent value.").  Instead, the Complaint only asserts that

> STi did not receive reasonably equivalent value or fair consideration in exchange for STi's obligation under the Guaranty because the Acquisition merely involved the transfer of STi's membership interests from one corporate parent to another corporate parent.

(Compl. ¶ 98.)  This allegation may establish that STi did not receive a "direct" benefit in exchange for the guaranty obligation, but the Plaintiff fails to provide allegations ruling out STi's receipt of any "indirect benefit," such as corporate synergy or the enhanced financial health of its corporate parent trickling down the corporate structure.  The Court therefore concludes that the Complaint insufficiently alleges a lack of reasonably equivalent value or fair consideration under

Count III and the extent of Count IV that is based on STi's payments pursuant to that guaranty obligation.

Since the Complaint fails to allege reasonably equivalent value and fair consideration in Counts II through IV, the insolvency element of the claims may not be presumed. *In re Trinsium*, 460 B.R. at 393. For the years 2010 and 2011 when the Acquisition and subsequent Note and guaranty payments were made, the Plaintiff concedes that it failed to include actual financial or balance sheet figures in the Complaint. (Opp. at 16 n.6.) Although the Plaintiff attempts to provide the figures from Vivaro's and STi's records in its Opposition (*see id.*), the Court must resolve the Motion based on the allegations of the Complaint, which only consist of conclusory allegations that Vivaro and STi were insolvent at such time. (*See* Compl. ¶¶ 3, 64, 69–70, 77, 90, 93–93, 100, 101, 107, 109.) Without providing allegations of the underlying factual figures, Counts II, III, and IV fail on their face. *See In re Trinsium Grp.*, 460 B.R. at 392 (stating that the Complaint should include "some sort of 'balance sheet' test or information . . . that the [c]ourt can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place"). Thus, the Motion is **GRANTED** and Counts II, III, and IV are **DISMISSED** without prejudice.

### D.     Count V

Count V seeks to recover the STi Transfers and Acquisition Payments made under the Note and guaranty, citing Bankruptcy Code sections 550 and 551, and NYDCL sections 278 and 279. (Compl. ¶¶ 111–116.) The Moving Defendants argue that Count V depends on the survival of Counts I through IV because it seeks to recover property also sought in those claims. (Motion at 14.) The Moving Defendants therefore move to dismiss Count V as inadequate for the same reasons they assert against Counts I through IV. (*Id.*)

32

The Court **GRANTS** the Motion and **DISMISSES** Count V to the same extent the Court dismisses Counts I through IV.

### E.    The Transferee Defendants

The Moving Defendants argue that the Complaint fails to state a claim against the Transferee Defendants, which include Defendants Leucadia, BEI Prepaid, BEI Prepaid Holdings, and Phlcorp.  (Motion at 18–20.)  According to the Moving Defendants, all allegations against the Transferee Defendants are made "on information and belief" and do not sufficiently implicate their participation in or benefit from the STi Transfers or Acquisition Transfers.  (*Id.*)  The Plaintiff argues that the Complaint adequately alleges that each of the Transferee Defendants, by way of their direct or indirect ownership interests in STi, had "dominion and control" over the assets subject to the transfers and benefited from the transfers such that they are subject to the fraudulent conveyance claims.  (Opp. ¶¶ 63–66.)

In making their arguments, the parties rely on case law discussing two separate but similarly analyzed or applied standards that limit the defendants from whom recovery of the fraudulent transfer may be sought.  First, for constructive and actual fraud claims brought under the NYDCL, "New York law permits money damages to be recovered only against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance."  *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005) (citation and internal quotation marks omitted).  This is a two part test—the complaint must allege that the defendant participated in the transfer at issue and that the defendant was the transferee or beneficiary of that transfer.  *See id.*  Similarly, under section 550(a) of the Bankruptcy Code, fraudulent conveyance claims brought pursuant to section 544 and applicable state law (i.e. the NYDCL) must "identify

a specific category of persons from whom recovery of the fraudulent transfer may be had." 11

U.S.C. § 550(a).

> There are three types of entities from whom or which a trustee may recover an avoidable transfer under § 544(b): an initial transferee, an entity for whose benefit the initial transfer was made or a subsequent transferee. The statute clearly separates "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made" from (2) any immediate or mediate transferee of such initial transferee," otherwise known as the subsequent transferee, because the liability to the estate of the initial transferee or the entity for whose benefit the initial transfer was made is absolute, whereas the liability of the subsequent transferee to the estate is not strict but subject to the "good faith purchaser for value" defense contained in § 550(b).

> . . .

> Thus an initial transferee is the person who has dominion and control over the subject of the initial transfer to the extent that he or she may dispose of it as he or she pleases . . . .

> On the other hand, the person whose hands touch the money or property simply to forward it to the initial transferee is but a mere conduit or intermediary if he or she does not receive any benefit from the initial transfer.

> . . .

> Section 550(a) treats with transferees, those with the power and intent to manipulate the subject matter of the transfer on the one hand, as just discussed, and those who benefit from the initial transfer, on the other hand. Logically, to benefit from the initial transfer cannot mean to exercise dominion and control over the money or property, or else the Bankruptcy Code would not have made a distinction between a transferee and the beneficiary of the initial transfer. Benefit occurs without the beneficiary ever holding the money or property, precisely because someone else received it.

> . . .

> The key to pegging the entity for whose benefit the initial transfer was made has two sides: 1) the entity must be the intended beneficiary and 2) the intended benefit must originate from the initial transfer.

*Miller v. Porush (Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.)*, 234 B.R. 293, 312 (Bankr.

S.D.N.Y. 1999) (citations omitted).  For either standard, courts look to the allegations in the

complaint to determine whether the plaintiff failed to state a claim as to each defendant.

For example, the district court in *Safety-Kleen Systems* dismissed actual fraudulent

conveyance claims against certain defendants because the complaint failed to allege "why

plaintiff believes that such transfers to [the relevant defendants] occurred or the factual basis or

the belief that these transfers were made without fair consideration.  Nor [did] the [c]omplaint

allege with any degree of specificity when the transfers occurred, how much money was

involved in the transfers, or the basis upon which plaintiff believes that the transfers were made

without consideration."  *Safety-Kleen Sys., Inc.*, 2013 WL 6795963, at *9 (analyzing actual

fraudulent conveyance claims under Federal Rule of Civil Procedure 9(b)).  The court

distinguished the case from another case that upheld a constructive fraudulent conveyance claim

where the complaint alleged "facts such as the period(s) of time during which the alleged

fraudulent transfers were made, the amount(s) transferred, and the specific entities to whom the

transfers were made."  *Id.* (discussing *In re M. Fabrikant & Sons Inc. v. JPMorgan Chase Bank,

N.A.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008)).

In *Sullivan v. Kodsi*, the district court dismissed fraudulent conveyance claims against (1)

two defendants because the sole allegations implicating them in the Complaint were:  "[o]n

information and belief, each of the Trust's beneficiaries have received or are entitled to receive

benefits of the assets fraudulently conveyed to the Trust" and that they had knowledge of certain

financial conditions of the entity that made the transfers; and (2) a defendant alleged to be a

"mediate transferee . . . as successor in interest," but against whom the complaint merely alleged

that he knew the transfers were fraudulent and acquiesced in the transfers and failed to allege his personal participation in the transfers.  *Sullivan*, 373 F. Supp. 2d at 309–10.

In *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 227 (S.D.N.Y. 2004), the district court dismissed fraudulent conveyance claims against defendants where the complaint merely alleged an indirect interest (once or twice removed stock ownership interest) in the entity that made the challenged transfers; according to the court, the alleged relationship was "too attenuated" and would have been more compelling had the complaint alleged that the defendants had a "direct ownership interest."  However, in *Stratton Oakmont*, the bankruptcy court held that a complaint could survive a motion to dismiss if it alleges that the defendant "was intended to receive" a benefit from the transfers, or even if the defendant did not receive a benefit, that the defendant was the intended beneficiary of the transfers.  *See Stratton Oakmont*, 234 B.R. at 315 (dismissing fraudulent conveyance claims against defendant because the complaint failed to allege that the defendant received a benefit from or was the intended beneficiary of the transfers).

Here, the allegations in the Complaint that implicate the Transferee Defendants are as follows:

- "This action seeks redress of the wrongful conduct of Defendants in which they sought to benefit themselves in their operation of STi Prepaid, LLC ('STi'), which also entailed breach of their fiduciary obligations as members of STi, and specifically seeks to avoid and recover various transfers that were made either directly or indirectly to Leucadia National Corporation ('Leucadia'), Baldwin Enterprises, Inc. ('Baldwin') and /or one or more of the other defendants (collectively, 'Defendants') by STi and Vivaro Corporation ('Vivaro') after both STi and Vivaro, on information and belief, were insolvent."  (Compl. ¶ 1)

- "[O]n information and belief, Defendants BEI Holdings and Phlcorp, as indirect parents of STi, and Defendants Cumming, Steinberg and Larsen, as owners of stock in Leucadia (Cumming and Steinberg) and BEI (Larsen) also received all or part of any upstream monetary transfer from STi.  On information and belief, Defendant Continenza also received a portion of any upstream monetary transfer from STi."  (*Id.* ¶ 38; *see also id.* ¶ 54.)

36

- "Thus, to the extent that Defendants Leucadia, BEI Holdings, BEI, PHlcorp, Cumming, Steinberg, Larsen, Continenza, ST Finance, and/or Tawfik were transferees of funds from STi during the time period relevant to this Complaint, those transfers are avoidable and recoverable as fraudulent transfers."  (*Id.* ¶ 40; *see also id.* ¶ 56.)

- "Said STi Transfers were not only avoidable and recoverable but also, upon information and belief, constituted an ongoing and continuing disregard of Defendants' fiduciary obligations to STi and STi's stakeholders, including STi's creditors, in connection with their ownership, control, management, and operation of STi."  (*Id.* ¶ 61.)

- "Defendants Leucadia and Baldwin, among others, had actual knowledge that STi was insolvent in or about June 2007 and thereafter."  (*Id.* ¶ 120.)

- "Baldwin and Leucadia knew that STi's insolvency was deepening, as discussed above."  (*Id.* ¶ 121.)

- "Notwithstanding the foregoing, in 2007 to 2008, Baldwin and Leucadia, among others, caused STi to make the STi Transfers."  (*Id.* ¶ 122.)

- "As alleged above, Defendants received benefit from the STi Transfers."  (*Id.* ¶ 123.)

- "At the time of the STi Transfers, Defendants Baldwin and Leucadia, among others, not only knew of STi's insolvency but also there was no legitimate purpose for the STi Transfers other than to benefit Defendants."  (*Id.* ¶ 124.)

- "Defendants Baldwin and Leucadia, among others, not only knew that the STi Transfers left STi unable to fulfill its obligations to its creditors and made the STi Transfers with the actual intent to hinder, delay, or defraud creditors."  (*Id.* ¶ 125.)

Although the Complaint alleges that the Transferee Defendants "benefited" from the transfers, there are no specific allegations about how or why they benefited from the transfers or that they were the intended beneficiaries of the transfers.  (*See, e.g.*, *id.* ¶¶ 1, 123, 124.)  As to BEI Prepaid Holdings and Phlcorp, the Complaint fails to allege anything more than an indirect ownership interest in STi, which is insufficient to establish "dominion and control."[5]  (Compl. ¶¶ 14–15.)  *See Roselink*, 386 F. Supp. 2d at 227.  The Complaint also fails to include any

---

[5]    The Complaint alleges that BEI Prepaid had a direct 75% LLC membership interest in STi.  (Compl. ¶ 13.)

37

allegations that BEI Prepaid, BEI Prepaid Holdings, or Phlcorp actually participated in the transfers—the Complaint only includes allegations that Defendants Baldwin and Leucadia "caused" the transfers to occur.  (*See* Compl. ¶ 122.)  Therefore, the Motion is **GRANTED** and the fraudulent conveyance claims against BEI Prepaid, BEI Prepaid Holdings, and Phlcorp are **DISMISSED** without prejudice for failure to state a claim.

### F.     Leave to Amend the Complaint

Rule 15(a), made applicable here by Federal Rule of Bankruptcy Procedure 7015, provides that "leave [to amend] shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  Leave to amend is proper "where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced, and the trial of issues will not be unduly delayed."  3 MOORE'S FEDERAL PRACTICE § 1508[2].

The Court dismisses Counts II through VI in whole and Counts I and V in part without prejudice because the Court concludes that the Plaintiff may be able to state facts sufficient to survive a motion to dismiss if afforded the opportunity to amend its pleading.  The Court therefore **GRANTS** the Plaintiff leave to amend the Complaint to the extent its claims are dismissed in this opinion.

### III.     <u>CONCLUSION</u>

The Complaint as presently drafted fails to state a plausible claim for relief except to the extent it seeks to avoid the 2007 STi Transfers in Counts I and V.  The Motion is therefore **DENIED** in that respect, but the Court **GRANTS** the Motion as follows:

1.  Count I is **DISMISSED WITHOUT PREJUDICE** to the extent it seeks to avoid the 2008 STi Transfers;

2.  Counts II through IV are **DISMISSED WITHOUT PREJUDICE**;

3. Count V is **DISMISSED WITHOUT PREJUDICE** to the extent it is based on the allegations of Counts II through IV and the 2008 STi Transfers alleged under Count I;

4. Count VI is **DISMISSED WITH PREJUDICE** to the extent it is based on Bankruptcy Code section 548 because it is time barred, but is **DISMISSED WITHOUT PREJUDICE** to the extent it is based on the NYDCL; and

5. All claims against the Transferee Defendants, except Leucadia, are **DISMISSED WITHOUT PREJUDICE**.

To the extent this opinion dismisses the Plaintiff's claims without prejudice, the Court **GRANTS** the Plaintiff leave to amend its Complaint within thirty days from the date of this Order. The defendants shall file a response to any further amended complaint within thirty days after an amended complaint is filed.

**IT IS SO ORDERED.**

Dated: February 3, 2015
     New York, New York

               *Martin Glenn*
               MARTIN GLENN
       United States Bankruptcy Judge